Filed 3/25/22

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----


| | |
|---|---|
| JOSE J. MEJIA et al., | C087709 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201600190824CUOEGDS) |
| v. | |
| ROUSSOS CONSTRUCTION, INC., | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Sacramento County, Shelleyanne Wai Ling Chang, Judge. Reversed with directions.

Tong Robbins LLP, B. Douglas Robbins for Plaintiffs and Appellants.

PETERSON WATTS LAW GROUP, LLP, Richard M. Watts, Jr. and Jeremy S. Millstone for Defendant and Respondent.


Plaintiffs Jose J. Mejia et al. appeal following a jury verdict in favor of defendant Roussos Construction, Inc. Principally, they contend the trial court erred in its instructions to the jury regarding the "ABC test" which determines whether a worker is an employee or an independent contractor for purposes of California wage laws. The

trial court had instructed the jury that before the ABC test is applied, plaintiffs must first establish that they were hired by Roussos Construction or its agent. We agree this was error. We will reverse the affected counts and remand for a new trial.

Plaintiffs also raise several contentions contingent on us finding plaintiffs were misclassified as independent contractors as a matter of law. We need not reach that argument and take no action on the additional contentions.

## FACTS AND HISTORY OF THE PROCEEDINGS

As pertinent to this appeal, plaintiffs are unlicensed flooring installers, who installed floors on behalf of defendant, Roussos Construction Inc., a general contractor. The dispute at trial largely turned on the status and function of three individuals who stood in between plaintiffs and Roussos. Plaintiffs called them "supervisors"; Roussos called them "subcontractors."

At trial, Roussos maintained that it used independent subcontractors (the three supervisors/subcontractors) who were licensed to perform work not permitted by Roussos' contractor's license. Those subcontractors hired and paid the plaintiffs, and according to Roussos, any mistakes in categorizing the flooring installers or complying with labor laws were solely the subcontractors'.

Plaintiffs maintained that Roussos had employed a misclassification scheme, whereby it placed a "man in the middle" between the company and the flooring installation employees. By classifying the flooring installers as subcontractors, Roussos avoided having to provide them with benefits or complying with labor laws.

All three supervisors/subcontractors testified at trial. One testified that he "[p]rovided labor for installations." He answered, "correct," when asked, "they worked for you. You worked for Roussos. . . .?" He also testified that plaintiffs were "contractors," not employees.

Another testified that he worked as a contractor for Roussos and engaged subcontractors to work on projects for Roussos. He testified that about 90 percent of his work was for Roussos. But he denied ever managing or supervising installers. He also testified that he did not treat the installers as employees and did not provide them benefits.

The third supervisor/subcontractor testified he was a subcontractor for Roussos and "installers" worked under his authority. He testified that he treated the installers as "independent installers" and did not provide labor protections, breaks, overtime, or wage statements. He also testified that Roussos had nothing to do with his decision on how to classify workers.

None of the three supervisors/contractors had a written contract with Roussos prior to litigation.

The Instruction Dispute

As to counts 1 through 4 pertaining to unpaid wages, overtime, meal and rest periods, and wage statements, the parties and trial court agreed the jury should be instructed on the ABC test articulated in *Dynamex Operations W. v. Superior Court* (2018) 4 Cal.5th 903 (*Dynamex*). Under that test, a worker is presumed an employee unless the "hiring entity" establishes three factors: (A) the worker is free from the hiring entity's control and direction in connection with the work; (B) the work is outside the hiring entity's usual course of business; and (C) the worker is customarily engaged in an independently established trade, occupation, or business. (*Id*. at pp. 957, 964.)

The parties, however, parted ways as to whether the jury should be instructed to first determine whether plaintiffs were hired by Roussos or an agent of Roussos' before applying the ABC test. Counsel for Roussos argued before the ABC test applies, "you first have to establish the hiring entity . . . ." He explained: "They've got to prove the agency theory in order to get to the ABC test. [¶] If there was no agency established and

3

the subcontractors did not have the right to hire on behalf of Roussos . . . then we don't get to the ABC test because Roussos was not the hiring entity . . . ."

Plaintiffs' counsel responded that *Dynamex* has no hiring test, but instead looks to the work performed. An employer can include one who knows persons are working in his business without being formally hired. Further, the *Dynamex* test places the burden on the defense, while the proposed instruction places the burden on plaintiffs to first prove they were hired by Roussos or an agent.

Defense counsel replied: "You've got to establish that we're the hiring entity in order to make us have the presumption. [¶] That's what *Dynamex* says. It's very clear."

The trial court ultimately agreed: "this jury does need to make the predicate finding of whether or not Roussos Construction was the hiring entity." It explained that *Dynamex* applies, and, "*Dynamex* does indicate . . . that the issue is the hiring entity first, and then if the jury finds that . . . Roussos Construction was the hiring entity of the Plaintiffs, then the burden shifts to Roussos Construction to prove all of the three ABC test elements."

### Jury Instructions and Verdicts

The jury was thereafter instructed, as to counts 1 through 4, that plaintiffs, "claim they were employees of Roussos Construction, Inc. and therefore entitled to payment for unpaid wages for each hour worked, overtime wages for overtime hours worked, meal periods, rest breaks and failure to provide accurate pay statements. To establish this claim, they must prove they were hired by Roussos Construction. [¶] If [plaintiffs] prove they were hired by Roussos Construction, Inc., or an agent of Roussos Construction Inc., then the law presumes they were employees of Roussos Construction, Inc. unless Roussos Construction, Inc. proves all of the following…." The instruction then provided the ABC test factors.

4

As to counts 5 through 7, the jury was instructed using the multifactor *Borello* test. The instruction provided in part that, "the most important factor is whether Roussos Construction Inc. had the right to control how [plaintiffs] performed the work, rather than just the right to specify the result." The jury was also told to take into account factors including, whether "[t]he work being done by [plaintiffs] was part of the regular business of Roussos Construction" and "[Plaintiffs] were not engaged in a distinct occupation or business."

Roussos' counsel echoed those instructions during closing arguments: "the Plaintiff has to prove on the first set of claims that Roussos Construction was the hiring entity," and "[y]ou heard no evidence in this case that Roussos Construction asked any of the subcontractors to hire one person, ten people or anyone for Roussos Construction." Counsel also argued that even if Roussos Construction was the hiring entity, it satisfied the ABC test.

The jury returned verdicts in defendant's favor on all counts.

DISCUSSION

I

*Instructional Error*

On appeal, plaintiffs contend the trial court erred in instructing the jury that before the ABC test is considered, plaintiffs must first "prove they were hired by Roussos Construction, Inc., or an agent of Roussos Construction Inc." Plaintiffs argue this instruction conflicted with the *Dynamex* decision and undermined its policy goals.

Roussos responds that the ABC test is a classification test that places the burden of proof on the "hiring entity." An entity not involved in a worker's hiring cannot be the "hiring entity" and thus cannot be liable for misclassifying a worker. Roussos notes the *Dynamex* court used the term "hiring entity" over 40 times, and therefore deemed the act of hiring by the hiring entity a critical factor in determining liability for misclassifying a

5

worker.  Roussos also cites *Henderson v. Equilon Enterprises, LLC* (2019) 40 Cal.App.5th 1111 (*Henderson*) and *Curry v. Equilon Enterprises, LLC* (2018) 23 Cal.App.5th 289 (*Curry*) for the proposition that a hiring entity cannot be held liable for misclassifying a worker it neither hired nor directed another entity to hire.

We agree with plaintiffs.

The *Dynamex* decision

Wage orders set minimum wages, maximum hours, and basic working conditions for employees in California.  (*Dynamex, supra*, 4 Cal.5th at pp. 913-914.)  In *Dynamex*, our high court considered, "what standard applies . . . in determining whether workers should be classified as employees or as independent contractors for purposes of California wage orders . . . ."  (*Id.* at p. 913.)  After canvasing prior decisions distinguishing employees from independent contractors, the court adopted the "ABC test," whereby a worker is considered an employee, "unless the hiring entity establishes (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact, (B) that the worker performs work that is outside the usual course of the hiring entity's business, and (C) that the worker is customarily engaged in an independently established trade, occupation, or business . . . ."  (*Id*. at p. 964.)

In so concluding, the court explained that while the wage orders neither define independent contractors nor specifically address their distinction from employees, the wage orders define "employ" to mean "to engage, suffer, or permit to work."  (*Dynamex, supra*, 4 Cal.5th at p. 926.)  The "suffer or permit" language derived from early twentieth century child labor statutes, which imposed liability " 'even when no common law employment relationship existed between the minor and the defendant, based on the defendant's failure to exercise reasonable care to prevent child labor from occurring.' "  (*Id.* at p. 937 quoting *Martinez v. Combs* (2010) 49 Cal.4th 35 (*Martinez*).)  By " '[n]ot

6

requiring a common law master and servant relationship, the widely used "employ, suffer or permit" standard reached irregular working arrangements the proprietor of a business might otherwise disavow with impunity.' " (*Ibid*.) " '[This] historical meaning continues to be highly relevant today: *A proprietor who knows that persons are working in his or her business without having been formally hired, or while being paid less than the minimum wage, clearly suffers or permits that work by failing to prevent it, while having the power to do so*.' " (*Id*. at p. 939.)

The *Dynamex* court concluded the "suffer or permit" standard applies to the question of whether a worker is an employee or an independent contractor. (*Dynamex, supra*, 4 Cal.5th at p. 943.) It further concluded the ABC test, adopted in a number of jurisdictions, was most consistent with the history and purpose of the "suffer or permit to work" standard in the wage orders. (*Id*. at pp. 955-957.) The court cited concerns that the prior test, the multifactor *Borello* test, afforded greater opportunity to evade wage and hour laws and made it difficult to determine how a particular category of worker would be classified. (*Id*. at pp. 954-956.) The court added: "Treating all workers whose services are provided within the usual course of the hiring entity's business as employees is important to ensure that those workers who need and want the fundamental protections afforded by the wage order do not lose those protections." (*Id*. at p. 960.)

Reading *Dynamex*, we do not think a threshold hiring entity test was intended. While the *Dynamex* court repeatedly refers to the party shouldering the burden as the "hiring entity," it never suggests that the term was intended to limit the scope of the test. Rather, as the court explained, the ABC test is an application of the "suffer or permit to work" standard, under which, "[a] proprietor who knows that persons are working in his or her business *without having been formally hired* . . . clearly suffers or permits that work by failing to prevent it, while having the power to do so." (*Dynamex, supra*, 4 Cal.5th at p. 939, quoting *Martinez, supra*, 49 Cal.4th at p. 69 [some italics omitted].)

Interpreting the *Dynamex* court's ABC test to include a threshold hiring test, with the worker bearing the burden, would also run counter to the intent of the California wage and hour laws, which "are remedial in nature and must be liberally construed in favor of affording workers protection." (*Ward v. United Airlines, Inc.* (2020) 9 Cal.5th 732, 754.) We therefore conclude the term "hiring entity" was selected for its neutral connotations and not as an unannounced prerequisite to the ABC test.

A similar conclusion was reached in *People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 287 (*Uber*). There, the defendant ride sharing companies argued that before the ABC test is considered there is a "threshold question in an ABC analysis," of whether they are hiring entities. (*Ibid*.) Rejecting the argument, the *Uber* court noted, "[t]he Supreme Court went to great lengths to explain why the ABC test . . . derives from the suffer or permit to work definition embedded in the wage orders it was construing." (*Ibid.*) Read in context, the term "hiring entity" was used "for its neutrality, so that it covers both employment status and independent contractor status, and thus does not presuppose an answer one way or another." (*Id*. at p. 288.) It was not meant to have "talismanic significance as a threshold indicator of employment status." (*Ibid.*) The court added that, "[w]hile the nature of the 'hiring entity' is always central to the statutory analysis, that question in this case collapses into prong B of the ABC test, which looks to whether the drivers' work is 'outside the usual course' of defendants' businesses." (*Ibid.*) And "[m]ost fundamentally," the court explained, creating a "step zero" is inconsistent with *Dynamex* in that the ABC test creates "a streamlined analysis readily amenable to application as a matter of law," and which is a powerful enforcement tool, consistent with the suffer or permit to work definition. (*Id*. at pp. 288-289.)

Several months after the *Uber* decision handed down, our supreme court returned to the ABC test, in *Vazquez v. Jan-Pro Franchising International, Inc.* (2021) 10 Cal.5th 944, 948 (*Vazquez*), where it considered whether *Dynamex* applies retroactively. Concluding it does, the court reiterated that *Dynamex* was an authoritative judicial

8

interpretation of the "suffer or permit to work" language. (*Id*. at pp. 948, 951.) And it again quoted from *Martinez* that, " '[a] proprietor who knows that persons are working in his or her business without having been formally hired . . . clearly suffers or permits that work by failing to prevent it, while having the power to do so.' " (*Id*. at p. 956, quoting *Martinez*, *supra*, 49 Cal.4th at p. 69.)

We agree with the reasoning in *Uber*. We also find it notable that *Uber* preceded *Vazquez* by several months, and nowhere does *Vazquez* suggest there might be a hiring entity threshold test. Indeed, in *Vazquez*, our supreme court used the term "hiring entity" only when quoting *Dynamex*. Elsewhere it referred to the party shouldering the burden under the ABC test as the "putative employer." (See e.g. *Vazquez, supra,* 10 Cal.5th at pp. 953, 956, 958 ["we reject the contention that it is unfair to putative employers to apply the ABC standard to work settings that predate the *Dynamex* opinion"].)

In sum, we conclude the ABC test, as articulated in *Dynamex*, does not include a threshold hiring entity test.

Defendant's reliance on *Henderson, supra*, 40 Cal.App.5th 1111 and *Curry, supra,* 23 Cal.App.5th 289, for the proposition that a hiring entity cannot be held liable for misclassifying a worker it neither hired nor directed another entity to hire, is also unavailing. Both *Henderson* and *Curry* declined to apply the *Dynamex* ABC test to joint employer liability claims. (*Henderson* at p. 1125; *Curry* at p. 314.) A joint employer liability claim (or joint employment case) involves a person or entity that is alleged to share the legal obligations of another employer by exercising significant control over the other employer's employees. (*Martinez, supra*, 49 Cal.4th 35, 50.)

In *Henderson*, the plaintiff had been employed as a station manager of several Shell-owned gas stations operated by Danville Petroleum. (*Henderson, supra*, 40 Cal.App.5th at p. 1114.) He alleged that while he had been hired by Danville, Shell was liable as his joint employer because Shell "directly and indirectly" controlled wages, hours, or working conditions of Danville employees. (*Ibid*.) Rejecting that argument, the

9

court explained, "[t]he record is undisputed that Danville alone set Henderson's wages, determined which employees would be deemed exempt from overtime regulations, and was solely responsible for Danville's payroll function and compliance with labor laws." (*Id*. at p. 1121.) It further concluded that, "the ABC test in *Dynamex* does not fit analytically with and was not intended to apply to claims of joint employer liability." (*Id*. at p. 1125.) It explained that, "[a]t bottom, *Dynamex* was concerned with the problem of businesses misclassifying workers as independent contractor" to obtain economic advantages — concerns not present with a joint employer claim, where "the worker is an admitted employee of a primary employer, and is subject to the protection of applicable labor laws and wage orders." (*Id*. at pp. 1127-1128.) "Joint employer claims raise different concerns, such as when the primary employer is unwilling or no longer able to satisfy claims of unpaid wages and workers must look to another business entity that may be separately liable as their employer." (*Id*. at p. 1128.)

*Curry* similarly involved a plaintiff who was hired by A.R.S. to manage a gas station. (*Curry, supra,* 23 Cal.App.5th at p. 295.) A.R.S. had a contract with Shell to operate Shell stations. (*Id*. at pp. 293-294.) The court concluded that while Shell, along with A.R.S., provided her a place to work and equipment, that was insufficient to raise a triable issue of fact as to whether Shell was her employer. (*Id*. at p. 308.) It could not be reasonably concluded that Shell controlled the manner and means by which plaintiff accomplished her work because it did not supervise her, it had no input on her skills or the length of time she worked, and did not pay her; also Shell was not in the business of operating service stations. (*Ibid*.) The court also concluded the ABC test was not intended to apply in joint employment cases where the plaintiff was already an employee of a primary employer that is "presumably paying taxes" and affording legal protections to employees. (*Id*. at p. 314.)

The instant case, however, is not a joint employment case. Plaintiffs are not admitted employees of a primary employer: plaintiffs maintain they were solely Roussos

10

employees, and the supervisors/subcontractors maintain plaintiffs were not their employees. And by all accounts, plaintiffs were not provided the protections due employees. Thus, this is not a case where the policy concerns of *Dynamex* are inapplicable. Rather, this case goes to the heart of the *Dynamex* question: were plaintiffs properly classified as independent contractors? *Curry* and *Henderson* are therefore inapposite.

Roussos, nevertheless, maintains that because plaintiffs were unlicensed, they are presumed employees of the subcontractors who hired them. It cites in support cases holding there is a conclusive presumption, under Labor Code section 2750.5 (statutory section citations that follow are to the Labor Code), that a person employing an unlicensed contractor is an employer. (See *Cedillo v. Workers' Comp. Appeals Bd.* (2003) 106 Cal.App.4th 227, 233; *Mendoza v. Brodeur* (2006) 142 Cal.App.4th 72, 77.) But that presumes the supervisors/subcontractors were independent of Roussos — ultimately a jury question. We also note that under section 2781, which codifies *Dynamex* and took effect after trial, the *Dynamex* holding does not apply to a contractor– subcontractor relationship in the construction industry — if the contractor demonstrates "[t]he subcontract is in writing." Here, none of the supervisors/contractors had written contracts with Roussos prior to litigation.

In sum, neither *Curry* nor *Henderson* nor the section 2750.5 presumption convinces us that *Dynamex* is inapplicable or that it includes a threshold hiring entity test. We therefore conclude the jury was misinstructed.

II

*Prejudice*

Plaintiffs maintain they were prejudiced by the erroneous jury instruction. They also ask that we direct the trial court to enter judgment as a matter of law, on counts 1

11

through 4, averring that under the uncontroverted facts, none of the ABC test factors could be met.

To those points, Roussos maintains that other jury instructions explained or clarified the challenge instruction. It points to an instruction that an employer is any person who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person. It also points to an instruction that if plaintiffs were hired by Roussos or an agent of Roussos, they are presumed to be employees.

While we agree with plaintiffs as to prejudice, we decline to direct a verdict.

Instructional error in a civil case is prejudicial "where it seems probable" that the error "prejudicially affected the verdict." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580.) Concomitantly, "[a] judgment may not be reversed on appeal, even for error involving 'misdirection of the jury,' unless 'after an examination of the entire cause, including the evidence,' it appears the error caused a 'miscarriage of justice.' " (*Id.* at p. 574.)

Under this standard, the instructional error was prejudicial as to counts 1 through 4. Requiring plaintiffs to prove, in effect, that Roussos directed an agent to hire them, placed a significant obstacle before plaintiffs and altered the nature of the ABC test, under which a worker is presumed to be an employee. No additional clarifying instruction could change that. We therefore conclude the error was prejudicial.

But we cannot agree that a directed verdict is warranted. Plaintiffs maintain that liability for counts 1 through 4 attaches as a matter of law because overwhelming evidence showed the floor installers were not free from Roussos' control, Roussos is indisputably a floor installation corporation, and no evidence showed plaintiffs had an independent business or licenses.

At trial, however, Roussos' counsel argued at closing that the ABC factors were not met. He argued there was no evidence Roussos exercised control over the plaintiffs'

12

hours.  Plaintiffs' work was "outside … the usual course of business of Roussos Construction," because by law, Roussos cannot install floors.  And as to plaintiffs being customarily engaged in an established trade, occupation, or business, counsel argued: "It's such an established trade that the Contractor's State Licensing Board issues a separate license for it."

The record offers some support for those assertions.  Roussos's CEO testified that he did not have significant control over the flooring installers.  He testified that flooring is as little as 40 percent of Roussos's business.  And he testifies that his contractor license does not permit him to perform work involving a single trade:  "I have to do more than two trades."  There was also evidence of invoices, reflecting the purchase of materials by one of the plaintiff installers, Miguel Osuna.  The invoices reflect the purchaser as "Osuna's Carpet."  Osuna however testified it was not his company, "because I don't have a license with that name" and the retailer had put that name on the account.

We are also mindful of the fact that the jury returned verdicts for Roussos on counts 5 through 7.  Those counts involved the *Borello* factors, and the jury was not instructed that plaintiffs must first prove they were hired by Roussos Construction.  As our supreme court has explained *Dynamex* "did not depart sharply from the basic approach of *Borello* . . . ," and the ABC test factors are prominent factors in the *Borello* test.  (*Vazquez, supra*, 10 Cal.5th at p. 956.)

Under these circumstances, we conclude the instruction error warrants reversal on counts 1 through 4, but not a directed verdict.

III

*Additional Contentions*

Finally, plaintiffs raise several cascading contentions.  They argue that "[i]f this Court reverses and finds that the Flooring Installers were misclassified as independent contractors," then a Labor Code violation has occurred for purposes of California's

13

Private Attorney General Act, or "PAGA." Plaintiffs therefore ask that we remand with instructions to conduct a jury trial on several factual questions pertaining to their PAGA claim.

Plaintiffs also ask that if we remand on the PAGA claim, that we reverse the trial court's order excluding three "subcontractor agreements" from evidence. Finally, they ask that if we find Roussos liable on counts 1 through 4 that we remand with instructions to determine an award of reasonable attorneys' fees and costs upon finding of PAGA liability.

As we are not directing a verdict on counts 1 through 4, and as plaintiffs have not alleged independent grounds for reversable error on their PAGA claim, count 8, we take no action on these contentions.

DISPOSITION

We reverse the judgment on counts 1, 2, 3, and 4 and remand for a new trial on those counts. In all other respects we affirm the judgment. The parties shall bear their own costs on appeal.

_____

HULL, J.

We concur:


_____

RAYE, P. J.



_____

HOCH, J.

14